UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
MIGUEL BERRIOS, ANN L. BERRIOS and
KIMBERLY CONLON,

                                                                    <u>MEMORANDUM AND ORDER</u>

                Plaintiffs,

        --against--                                           CV-06-5848
                                                                       (Wexler, J.)

STATE UNIVERSITY OF NEW YORK
AT STONY BROOK, SHIRLEY STRUM
KENNY, Individually and in her Official
Capacity, JEFFREY E. PESSIN, Individually
and in his Official Capacity, CRAIG C. MALBON,
Individually and in his Official Capacity,
NORMAN EDELMAN, Individually and
in his Official Capacity, and FU PEN CHIANG,
Individually and in his Official Capacity,

                Defendants.
------------------------------------------------------------X

        LAW OFFICE OF STEVEN A. MORELLI
        BY: STEVEN A. MORELLI, ESQ.
        One Old Country Road, Suite 347
        Carle Place, New York 11514
        Attorneys for Plaintiffs

        ANDREW M. CUOMO, Attorney General of the State of New York
        BY: SUSAN M. CONNOLLY, ESQ., Assistant Attorney General
        300 Motor Parkway, Suite 205
        Hauppauge, New York 11788
        Attorneys for Defendants

WEXLER, District Judge:

       This is a civil rights action commenced pursuant to 42 U.S.C. §§ 1983, 1985 and 1986, by

Plaintiffs Miguel Berrios, Ann Berrios and Kimberly A. Conlon (collectively "Plaintiffs") against the

State University of New York at Stony Brook (the "University"), Shirley Strum Kenny, the President

1

of the University ("Kenny") and individual Defendants Jeffrey E. Pessin ("Pessin"), Craig C. Malbon ("Malbon"), Norman H. Edelman ("Edelman") and Fu Pen Chiang ("Chiang"). Defendants Pessin, Malbon, Edelman and Chiang were, during relevant times, faculty members at the University. Presently before the court is Defendants' motion to dismiss. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

### I. The Parties

Plaintiff Miguel Berrios ("Dr. Berrios") has been an employee of the University for twenty years. He has worked at various faculty positions within and related to the University Department of Pharmacology. Dr. Berrios has a Ph.D. and holds the title of Research Associate Professor at the University. Ann Berrios is married to Dr. Berrios and has also been employed at the University for twenty years. Kimberly Conlon ("Conlon") is also a University employee. Conlon has been employed at the University for ten years and serves as research assistant to Dr. Berrios.

As noted, Defendant Kenny is the President of the University. The remaining individual Defendants are faculty members at the University and have worked with Plaintiffs in various capacities.

### II. The Court of Claims Action

On April 15, 2003, Dr. Berrios filed a notice of claim against the University and Malbon in the New York Court of Claims (the "Court of Claims Action"). The "claim" filed in the Court of Claims Action, which is analogous to a complaint filed in connection with a civil lawsuit in this court, details allegations concerning Dr. Berrios's employment with the University. The claim's recitation of facts begins in 1991, when Dr. Berrios became the director of the University Microscopy Imaging Center ("IMIC"). The UMIC is described as a research core facility with resources to conduct research projects requiring advanced light and electron microscopy techniques. The wrongdoing forming the

2

basis of the majority of Plaintiff's claims stems from a 1995 incident when Dr. Berrios allegedly uncovered the falsification of scientific data by Defendant Malbon. The claim speaks of Malbon's attempts to thereafter undermine Dr. Berrios's career and thwart his attempts to obtain a permanent position with the University. The claim also contains allegations regarding Malbon spreading false rumors of an illicit relationship between Dr. Berrios and Conlon.

In the context of the Court of Claims Action, Dr. Berrios claimed that Defendants deprived him of his Constitutional rights to be free from discrimination and retaliation based upon the exercise of free speech. He further claimed that Defendants' actions were sufficiently severe and pervasive to create a hostile work environment.

In 2006, the parties to the Court of Claims Action entered into a stipulation of settlement and discontinuance. That stipulation provided for the payment of $75,000 to Dr. Berrios and the discontinuance, with prejudice, of the Court of Claims Action. The parties also entered into a release (the "Release"). The Release provides for Dr. Berrios to:

> release and discharge . . . the State of New York, all of its officers, agents and employees, from all claims, demands and liability of every kind and nature, legal or equitable, in [the Court of Claims] or any other, occasioned by or arising out of the facts set forth [in the Court of Claims claim], and in any case any claim shall have been filed by [Dr. Berrios] with the Clerk of the Court of Claims for said damages at any time prior to the date of [the] release [the parties] consent and stipulate that an order may be made by the Court of Claims without notice . . . dismissing said claim upon the merits.

As the plain language of the Release indicates, it provides for the release of the University and its employees from all claims arising out of the facts set forth in the Court of Claims action. The notary public witnessing the signing of the Release indicates that it was signed by Dr. Berrios on August 11, 2006.

III. <u>The Factual Allegations of the Complaint</u>

Approximately two months after the signing of the Release in the Court of Claims Action, this lawsuit was filed. In a highly detailed 390 paragraph, 56 page complaint, Plaintiffs set forth the facts

3

upon which they base their claims. The factual allegations recited in this complaint mirror those of the Court of Claims Action, revolving around the 1995 discovery by Dr. Berrios of the alleged falsification of scientific data by Defendant Malbon. Similar to the Court of Claims Action, the complaint here alleges that following this discovery, Malbon embarked upon a campaign of continuous, intentional and abusive pattern of harassment against Plaintiffs "in an attempt to undermine Dr. Berrios's career and the future of the UMIC." This harassment, which is alleged to have taken place in the professional and personal lives of all three Plaintiffs, is alleged to continue to date. The court will not detail here every alleged aspect of harassment, but included in the complaint are allegations running the gamut from undermining Dr. Berrios's attempt to be named to a permanent position at the University, to the allegation that Malbon was responsible for acts of vandalism at the Berrios home to spreading the rumor (through Malbon's alleged posting of false and sexually explicit graffiti) that Dr. Berrios engaged in an illicit affair with Conlon. These factual allegations span a time frame of 1996 through the present.

## IV. The Causes of Action in the Complaint

Plaintiffs' complaint contains ten separately stated causes of action. The federal causes of action allege First Amendment and Due Process claims as follows:

- Dr. Berrios: Retaliation for the exercise of his First Amendment rights to petition the government, free speech and denial of due process of law.

- Ann Berrios: Violation of her First Amendment right to freedom of association and denial of due process of law.

- Conlon: Retaliation for asserting her First Amendment rights to freedom of speech and freedom of association and denial of due process of law.

4

The complaint also contains state law claims on behalf of all Plaintiffs alleging: (1) intentional infliction of emotional distress and (2) injurious falsehood.[1]

V. Defendants' Motion

Defendants seek dismissal of all claims. First, Defendants seek dismissal of all claims asserted by Dr. Berrios arising after settlement of the Court of Claims Action on the grounds of res judicata and/or collateral estoppel. Defendants seek dismissal of all claims against the State or its agencies on the ground of Eleventh Amendment immunity. Defendants also assert that Plaintiffs fail to state a claim for violation of the rights of freedom of speech, freedom of association, due process or the claims brought pursuant to New York State law. The motion to dismiss also raises qualified immunity and statute of limitations as separate grounds for dismissal. The court turns to address the merits of the motion.

## DISCUSSION

I. Standards on Motion to Dismiss

In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court rejected the "oft-quoted" standard set forth in Conley v. Gibson, 355 U.S. 41, 78 (1957), that a complaint should not be dismissed, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. at 45-46. The court discarded the "no set of facts" language in favor of the requirement that plaintiff plead enough facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974. The "retirement" of Conley's language, see Bell Atlantic Corp., 127 S. Ct. at 1969, is not a wholesale rejection of the general pleading rules to which federal courts have become accustomed. Instead, it is a rejection of Conley's "negative gloss" on the accepted pleading standard that once a claim is stated, it may be supported by any set of facts

---

[1] Plaintiffs' complaint also contains a cause of action for negligent supervision and retention. Dismissal of this cause of action is unopposed.

5

consistent will the allegations of the complaint. Bell Atlantic Corp., 127 S. Ct. at 1969. Indeed, shortly after its decision in Bell Atlantic, the Court reiterated that the pleading of specific facts in support of a complaint is not necessary. Instead, a complaint need only give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Erikson v. Pardus, 127 S. Ct. 2197, 2200 (2007).

The "plausibility" language used by the Supreme Court in Bell Atlantic, has not been interpreted by the Second Circuit to require a "universal standard of heightened fact pleading," but to require a complaint to "amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible."* Iqbal v. Hasty, 490 F.3d 143, 158 (2d Cir.2007) (emphasis in original). Further, courts have noted that while heightened factual pleading is not the new order of the day, Bell Atlantic holds that a "formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Williams v. Berkshire Fin. Grp. Inc., 491 F. Supp.2d 320, 324 (E.D.N.Y. 2007), quoting, Bell Atlantic Corp., 127 S. Ct. at 1959.

In the context of a motion to dismiss, this court must, as always, assume that all allegations set forth in the complaint are true and draw all inferences in favor of the non-moving party. Watts v. Services for the Underserved, 2007 WL 1651852 *2 (E.D.N.Y. June 6, 2007). The court must ensure, however, that the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp., 127 S. Ct. at 1974. While a Rule 12 motion is directed only to the sufficiency of the pleading, the court determining the motion may rightfully consider written documents attached to the complaint as well as documents incorporated thereto by reference and those of which plaintiff had knowledge and relied upon in commencing her lawsuit. See Brass v. Amer. Film Techn., Inc., 987 F.2d 142, 150 (2d Cir. 1993); Watts, 2007 WL 1651852 *2.

II.  Res Judicata

Under the doctrine of res judicata, a final judgment on the merits bars subsequent litigation between the same parties or their privies, of all claims that were or could have been, raised in the first action. Allen v. McCurry, 449 U.S. 90, 94 (1980); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286-87 (2d Cir. 2002). A dismissal with prejudice operates as a final judgment on the merits for res judicata purposes. Id. at 287. Such dismissals are given res judicata effect even if the parties fail to memorialize their agreement in a written settlement agreement. Hanley v. Café Des Artistes, Inc., 1999 WL 688426 *6 (S.D.N.Y. 1999). The dismissal itself is the adjudication on the merits that triggers application of the doctrine of res judicata. Id. Where a settlement agreement accompanies a dismissal, "the preclusive effect of the settlement is measured by the intent of the parties to the settlement." Hanley, 1999 WL 688426 *6, quoting, Greenberg v. Board of Governors, 968 F.2d 164, 168 (2d Cir. 1992).

Claims that "might have been raised" in an earlier proceeding are those that arise from the "same transaction or claim" forming the basis for the first lawsuit. See Marvel Characters, 310 F.3d at 287. The legal theory advanced is not determinative as to whether a claim is barred. Even if a newly asserted claim is based upon a different legal theory, that claim is nonetheless barred if it arises from the same transaction as the claims earlier raised. L-Tecs Elecs. Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 88 (2d Cir. 1999); Saud v. Bank of New York, 929 F.2d 916, 919 (2d Cir. 1991).

Claims will be deemed to arise from the same transaction, for example, where they "are related in time, space, origin, or motivation . . . ." Marvel Characters, 310 F.3d at 287, quoting, Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001). Important factors to consider when applying this transactional approach to res judicata include whether the same evidence is needed to support both

7

claims and whether the same facts are essential to both actions. <u>Prime Mgmt. Co., Inc. v. Steinegger</u>, 904 F.2d 811, 816 (2d Cir. 1990).

III.  <u>Eleventh Amendment</u>

Defendants argue, and Plaintiffs concede, that the Eleventh Amendment bars any claim for monetary relief against the individual Defendants in their official capacities. Accordingly, the court dismisses any such claims. To the extent that prospective injunctive relief is sought, the Eleventh Amendment is not a bar and Plaintiffs are free to pursue any such claims that survive this motion. Plaintiffs may also pursue any remaining claims against the individual Defendants in their individual capacities.

IV.  <u>First Amendment Claims</u>

Plaintiffs assert the deprivation of their First Amendment rights. Specifically, there are claims for: (1) the violation of the right to free speech; (2) the right of access to the courts and to petition the government and (3) the right of association. The court outlines the legal principles of each claim below.

    A.  <u>First Amendment Right to Freedom of Speech</u>

Public employees such as Plaintiffs retain their constitutionally protected right to comment on matters of public interest. <u>Connick v. Myers</u>, 461 U.S. 138, 140 (1983); <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563, 568 (1968). To state a claim alleging retaliation for exercise of this right, Plaintiffs must show: (1) that the speech at issue was constitutionally protected; (2) that they suffered an adverse employment decision, and, (3) that a causal connection exists between the exercise of speech and the adverse employment action, sufficient to establish that the speech was a motivating factor in the decision to take the adverse action. <u>McCullough v. Wyandanch Union Free School District</u>, 187 F.3d

272, 278 (2d Cir. 1999); Morris v. Lindau, 196 F.3d 102, 110 (2d Cir. 1998); see also Hellstrom v. United States Dep't of Veteran's Affairs, 201 F.3d 94, 97 (2d Cir. 2000).

Speech on "'any matter of political, social, or other concern to the community' is protected by the First Amendment." Morris, 196 F.3d at 110, quoting, Connick, 461 U.S. at 146. Adverse employment action sufficient to state a retaliation claim includes firing, demotion and refusal to promote. Morris, 196 F.3d at 110. This element of a retaliation claim also includes more subtle employment decisions, including negative changes in the terms and conditions of employment such as a reduction in duties or a transfer from a productive position to a menial position. Id. at 113; see Lieberman v. Reisman, 857 F.2d 896, 899-900 (2d Cir. 1988). The final element of Plaintiffs' retaliation claim is establishment of a causal connection between the exercise of speech and the adverse action. This connection must be sufficiently strong to warrant the inference that the protected speech was a "substantial motivating factor" in the employment decision. A causal connection may be demonstrated circumstantially by showing a temporal connection between the exercise of speech and the employment decision. Where a long period of time elapses between the speech and the adverse employment action, the inference of causation becomes weak. See Morris 196 F.3d at 113 (two year lag between speech and firing negates inference of causation).

Once these elements are demonstrated, a defendant has the opportunity to show that the same employment decisions would have been made in the absence of the exercise of speech. Morris, 196 F.3d at 110; see Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 247, 287 (1977).

B. First Amendment Right of Access and to Petition the Government

The First Amendment protects the right of access to the courts. Lewis v. Casey, 518 U.S. 343, 350 (1996); Monsky v. Moraghan, 127 F.3d 243, 246 (2d Cir. 1997); Patriots Way, LLC v. Marconi, 2007 WL 988712 *4 (D. Conn. 2007). The right of access is "bound up" with the First Amendment right to petition the government. See Colondres v. Scoppetta, 290 F. Supp.2d 376, 381 (E.D.N.Y.

2003). When the government obstructs an individual's effort to seek judicial redress, this right is violated. Whalen v. County of Fulton, 126 F.3d 400, 406 (2d Cir. 1997). The claim of obstruction must be supported by a showing that state action hindered the plaintiff's effort to "pursue a non-frivolous legal remedy." Id. (citation omitted). Additionally, plaintiff must show injury, i.e., that defendant took action that was actually responsible for prejudicing an existing action or interfering with the right of access. Id.

The right of access to the courts and to petition the government includes the right to be free from retaliation for the exercise of such right. Colondres, 290 F. Supp.2d at 382; see Patriots Way, 2007 WL 988712 *6. A plaintiff alleging retaliation must allege that: "(i) he has an interest protected by the First Amendment; (ii) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (iii) the defendant's action effectively chilled the exercise of the plaintiff's First Amendment rights." Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998); see also Ford v. Reynolds, 326 F. Supp.2d 392, 403 (E.D.N.Y. 2004).

The right of access is subject to the same type of analysis as the right to free speech. White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir. 1993). Thus, a plaintiff asserting violation of the right to access must show that the access implicates a matter of public concern. Id.; Bates v. Bigger, 192 F. Supp.2d 160, 171 (S.D.N.Y. 2002).

C.  First Amendment Right to Freedom of Association

The right of intimate association has been described by the Supreme Court as a right that protects intimate "highly personal relationships." Roberts v. United States Jaycees, 468 U.S. 609, 618 (1984). The relationships sought to be protected from state intrusion are personal affiliations that, for example, "attend the creation and sustenance of a family – marriage . . . the raising and education of children . . . and cohabitation with one's relatives." Id. at 619. Such protected relationships are

characterized by "relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." Id.

In Adler v. Pataki, 185 F.3d 35 (2d Cir. 1999), plaintiff alleged that he was unconstitutionally terminated from his public employment with the State of New York. Plaintiff supported his wrongful termination claim with the allegation that he was fired in retaliation for his wife's initiation of a lawsuit against the State. The firing of plaintiff in Adler was alleged to infringe upon plaintiff's right to associate with his wife. The Second Circuit noted that the state action at issue neither prohibited, regulated nor was aimed at ending plaintiff's marriage-- actions that have traditionally be held to violate the right of intimate association protected by other constitutional provisions. See, e.g., Loving v. Virginia, 388 U.S. 1, 12 (1967) (striking down anti-miscegenation statutes as violating the Due Process Clause of the Fourteenth Amendment). The court stated, however, that where it is claimed that the exercise of one spouse's First Amendment right harms a right of intimate association, that right was held to be properly analyzed as the deprivation of a right under the First Amendment. Adler, 185 F.3d at 44. Thus, while the court characterized the matter as "not free from doubt," it held that one spouse's claim that adverse employment action was taken solely in retaliation for the conduct of the other spouse is properly analyzed as a claimed violation of the First Amendment right of intimate association. Id. at 44.

Factors including cohabitation and the precise degree of kinship are considered when determining whether a relationship is protected by the First Amendment. Patel v. Searles, 305 F.3d 130, 135 (2d Cir. 2002). Thus, the right of intimate association encompasses the husband/wife relationship addressed in Adler, as well as the familial relationships between parents, siblings and children. See Patel v. Searles, 305 F.3d 130, 135 (2d Cir. 2002); Sutton v. Village of Valley Stream, 96 F. Supp.2d 189, 192-93 (E.D.N.Y. 2000) (father/son relationship held to be intimate association protected by the First Amendment). Where, however, the relationship sought to be protected falls

outside of the familial arena, it has been held to be not similarly protected. See Bates v. Bigger, 192 F. Supp.2d 160, 169-70 (S.D.N.Y.), aff'd. mem., 2002 WL 31875633 (2d Cir. 2002) (refusing to extend Constitutional protection to adulterous relationship between co-workers).

V.     Due Process

Due process has both a procedural and substantive component. Procedural due process requirements are generally satisfied by appropriate notice and an opportunity to be heard. See Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir. 1999). Substantive due process, on the other hand, refers not to particular hearing procedures, but circumscribes an "outer limit" on permissible governmental action. Natale, 170 F.2d at 263.

To state a due process violation – procedural or substantive – Plaintiff must first show a deprivation of a constitutionally protected property or liberty interest. White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1061-62 (2d Cir.), cert. denied, 510 U.S. 865 (1993); Costello v. McEnery, 1994 WL 410885 *4 (S.D.N.Y. August 3, 1994), aff'd, 57 F.3d 1064 (2d Cir. 1995). It is only when such a right is established that the court may turn to a discussion of whether there has been a deprivation of that right without due process. While state law may define the interest sought to be protected, federal law determines whether an interest rises to the level of an "entitlement" implicating the protections of the Due Process Clause. Ezekwo v. New York City Health & Hosp. Corp., 940 F.2d 775, 782 (2d Cir.), cert. denied, 502 U.S. 1013 (1991), quoting, Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 9 (1978); Babcock v. Rezak, 1998 WL 543742 *3 (W.D.N.Y. August 18, 1998).

The recognition of a property right to the continuation of one's public employment, or to particular working conditions, must be based upon more than an "abstract need or desire," instead, there must be a "legitimate claim of entitlement . . . ." Morris v. Lindau, 196 F.3d 102, 115 (2d Cir. 1999), quoting, Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Thus, a plaintiff must establish that the continuation of employment or a desired benefit was "virtually a matter of right." Kane v.

12

Krebser, 44 F. Supp.2d 542, 550 (S.D.N.Y. 1999), quoting Schwartz v. Thompson, 497 F.2d 430, 433 (2d Cir. 1974).

## DISPOSITION OF THE MOTION TO DISMISS PLAINTIFFS' CLAIMS

I.  The Extent of the Res Judicata Bar To Dr. Berrios's Claims

The first order of business is to determine the extent to which, if any, the settlement of the Court of Claims Action bars the claims of Dr. Berrios. Defendants take the position that the Release bars all claims arising prior to the date of the Release. Plaintiffs on the other hand, argue that the bar applies only to claims arising prior to initiation of the Court of Claims Action. Plaintiffs therefore argue that they are free to assert all claims arising after the filing of the Court of Claims Action, even if such claims arose before the date of the Release. Thus, Plaintiffs seek to keep alive claims arising after the 2003 initiation of the Court of Claims Action. Defendants, on the other hand, seek to bar all claims arising prior to the 2006 Release.

Application of the principles referred to above leads the court to conclude that res judicata bars all claims asserted by Dr. Berrios that arose prior to the settlement of the Court of Claims Action. The facts set forth in support of the Court of Claims Action are identical to those set forth as the factual bases for the claims here. While the current complaint contains some additional detail, this does nothing to differentiate the claims. Res judicata bars all claims that arise from the "same transaction or claim" forming the basis for the first lawsuit. See Marvel Characters, 310 F.3d at 287.

More importantly, as to the effective date of the res judicata bar, the court holds that all claims arising prior to the Release date are barred. Dr. Berrios settled his claims with Defendants and cannot now parse the language of the Release so as to revive certain claims. As noted, "the preclusive effect of the settlement is measured by the intent of the parties to the settlement." Hanley, 1999 WL 688426 *6, quoting, Greenberg v. Board of Governors, 968 F.2d 164, 168 (2d Cir. 1992). The Release makes

specific reference to the dismissal of any claim that may have been filed prior to the date of the Release. In any event, the court cannot imagine a set of circumstances under which a settling defendant would intend to settle only the claims asserted and not all claims arising prior to the date of the settlement. In view of the number of years that may pass between institution of a claim and the settlement thereof, it would make little sense for a defendant to remain open to claims, arising from the same set of facts, that arise prior to the date of the settlement.

In light of the foregoing, the court holds that the claims that may be asserted by Dr. Berrios here shall be limited to those arising after the date of the settlement of the Court of Claims Action and not those arising after the 2003 filing of that case. Res judicata bars any claim that could have been raised prior to the Release date. The court turns now to assess the viability of any such surviving claims as well as the claims raised by Plaintiffs Ann Berrios and Conlon.

II. First Amendment Claims

    A. Dr. Berrios

The First Amendment claim of Dr. Berrios alleges violation of his right to freedom of speech as well as his right to petition the government. It is asserted that Defendants retaliated against Dr. Berrios in violation of these rights after the filing of the Court of Claims Action. Among the factual allegations set forth in support of his claim, Dr. Berrios alleges that in 2003, Malbon placed a sexually explicit videotape in Berrios's University mailbox. Dr. Berrios filed a complaint with the University and alleges that no action was taken. Dr. Berrios asserts that he became aware of the University's failure to properly address his case as a result of documents produced in the course of discovery in the Court of Claims Action. Further acts of retaliation described in the present action are the 2004 vandalism of the Berrios home, allegedly committed by Malbon, the 2005 non-renewal of Dr. Berrios's

14

contract, the failure to grant Berrios a discretionary salary increases between 2001 and 2006 and the 2002-2006 marginalization of the UMIC facility.

With the exception of an occasional reference to the year 2006, the facts alleged in support of Dr. Berrios's retaliation claims took place prior to the settlement of the Court of Claims Action. Any claim arising prior to settlement of that action have been dismissed on the ground of res judicata. To the extent that any claim arose after the 2006 settlement, the court holds that a claim for retaliation is not subject to dismissal at this time. Thus, to the extent that Dr. Berrios claims that he suffered retaliation, after the settlement of the Court of Claims Action, and that such retaliation is causally connected with that action, he states a claim. The court reiterates the narrow time frame of any such claim as limited to actions taken against Dr. Berrios after settlement of the Court of Claims Action.

B. Ann Berrios

Ann Berrios's First Amendment claim alleges violation of her right to freedom of association. In support of this claim, Mrs. Berrios states that her supervisor, Defendant Chiang, knew of the conflict between Dr. Berrios and Defendant Malbon as well as the claims asserted by Dr. Berrios in the Court of Claims Action. Mrs. Berrios states that Chiang treated her unfairly because of her marriage to Dr. Berrios. Adler, 185 F.3d at 44. It is clear that the marital relationship between Ann Berrios and Dr. Berrios is within the scope of relationships protected by the First Amendment. To the extent that Ann Berrios alleges that she suffered adverse employment action because of her relationship with her husband, she states a claim. See Adler, 185 F.3d at 44.

C. Kimberly Conlon

Plaintiff Conlon's First Amendment claims assert retaliation for exercising her right to freedom of speech and her right to freedom of association. The topics upon which Conlon is alleged to have exercised her right to speak are the same topics alleged in support of the First Amendment claim of Dr. Berrios. Thus, Conlon claims retaliation for speaking about Malbon's alleged falsification of data and

complaining to the University about the harassment she suffered. She also claims retaliation following her speaking about the unlawful disposal of UMIC equipment. At this stage in the proceedings, the court is not prepared to reject these matters as outside of the realm of speech protected by the First Amendment. Accordingly, the court declines to dismiss Conlon's free speech claim.

Like Ann Berrios, Conlon alleges a First Amendment claim based upon the violation of her right to freedom of association. This claim alleges unfair treatment and retaliation in the terms of her employment as a result of her association with Dr. Berrios. Conlon's freedom of association claim is based upon her close working relationship with Dr. Berrios. The court does not interpret either Roberts or Adler to embrace such a claim. These cases make clear that the nature of the relationships encompassing a freedom of association claim is familial and intimate in nature. See Roberts, 468 U.S. at 619. The court declines to hold that the professor/research assistant relationship falls within the category of intimate relationships protected by the First Amendment right of association. Accordingly, the court dismisses any claim by Conlon for deprivation of her First Amendment right to freedom of association.

### III. Due Process Claims

All three Plaintiffs claim deprivation of their Constitutional rights to due process of law. The Constitutional rights alleged to have been violated without due process are alleged protected property and liberty interests in Plaintiffs' jobs and their rights to make a living.

Plaintiffs Dr. Berrios and Ann Berrios acknowledge that they had contracts of employment that were renewable by the University. Dr. Berrios claims that the pattern of renewal of his contract over the period of several years amounts to a legitimate claim of entitlement in continued employment, sufficient to support a due process claim. Conlon acknowledges that her salary is supported through the discretionary grant of research funds to Dr. Berrios. Her employment, therefore is dependent on the continuing employment of Dr. Berrios.

16

As noted, a plaintiff claiming Constitutional rights to continued employment or benefits must show that these rights were "virtually a matter of right." Kane, 44 F. Supp.2d at 550, quoting Schwartz v. Thompson, 497 F.2d 430, 433 (2d Cir. 1974). No Plaintiff here can satisfy this standard. Instead, even construing the complaint in the light most favorable to all Plaintiffs, it is clear that these individuals were employed pursuant to specific contracts that guaranteed neither continuing employment nor tenure. Under these circumstances, the court dismisses the Due Process claims of all Plaintiffs.

IV. Statute of Limitations and Qualified Immunity

Defendants raise serious issues regarding statute of limitations and qualified immunity. Many of the factual allegations in the complaint pre-date the limitations periods applicable to Plaintiffs' federal and state claims. The court will await factual development of the claims actually intended to be pursued by Plaintiffs before considering whether claims are barred by the statute of limitations. The court rules similarly with respect to the issue of qualified immunity and holds that at this early stage of the proceedings, where the facts have yet to be developed, dismissal on the basis of qualified immunity is denied.

V. Merits of the State Law Claims

Plaintiffs have consented to dismissal of their state law negligent hiring claim. Remaining are claims for intentional infliction of emotional harm and injurious falsehood. In light of the fact that there are federal claims remaining to be litigated, the court declines to dismiss the state law claims at this time.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The court dismisses, on res judicata grounds, all claims asserted by Dr. Berrios that arose prior to the settlement of his Court of Claims Action. The court dismisses the First Amendment freedom of

association claim of Kimberly Conlon. The court dismisses the Due Process claims of all Plaintiffs. The court denies the motion to dismiss any other claims at this time. The parties are directed to proceed with discovery and the Clerk of the Court is directed to terminate the motion to dismiss.

SO ORDERED

_____
LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
       October ?, 2007